IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| O.J., by and through his mother, JENNIFER JOHNSON, Plaintiff, | § § § | Case No. 4:21-cv-02239 |
| | § | |
| v. | § § | |
| TOMBALL INDEPENDENT SCHOOL DISTRICT, a Texas public school district, Defendant. | § § § | |

**PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**

Comes now Plaintiff O.J. and by his mother, Plaintiff Jennifer Johnson ("Plaintiffs" or "O.J.") and files this Motion for Injunctive Relief against Defendant Tomball Independent School District ("District") and states as follows:

Dated this 9th day of July 2021.

*s/Sonja D. Kerr*
Sonja D. Kerr
Lead Counsel, Counsel-In-Charge
State Bar #24095771
Connell Michael Kerr, LLP
9600 Great Hills Trail, Suite 150
Austin, Texas 78759
Telephone: (512)-637-1083
Facsimile: (512)-717-5204
Cell: (610)-675-7192
Email: Sonja@cmklawfirm.com

# TABLE OF CONTENTS

Table of Contents ........ ii

Table of Authorities ........ iii

Request for Immediate Hearing on Injuctive Relief ........ 1

Requested Injunctive Relief ........ 2

Argument and Authorities ........ 2

A. Substantial likelihood of success on the merits ........ 2

B. Substantial threat that irreparable injury will result ........ 6

C. Threatened injury outweighs any harm to Defendants from the Order ........ 7

D. Injunctive relief will not disserve the public interest ........ 8

E. Duration of Temporary Restraining Order ........ 8

Conclusion ........ 9

Certificate of Conference ........ 9

Certificate of Service ........ 10

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alexander v. Choate*,
469 U.S. 287 (1985)……………………………………………………………………… 3

*Anderson v. Franklin Inst.*,
185 F. Supp. 3d 628, 185 F. Supp. 3d 628 (E.D. Pa 2016)……………………….………………… 5

*Canal Auth. Of Florida v. Callaway*,
489 F.2d 567, 572 (5th Cir. 1974)……………………………………………...…………… 2

*D.D. v. L.A. Unified Sch. Dist.*,
984 F. 3d 773 (9th Cir. 2020), *vacated*, 995 F.3d 670 (9th Cir. May 6, 2021), 2021 U.S. App. LEXIS 13563…………………………………………………………………...………… 4

*Doucette v. Georgetown Pub. Sch.*,
936 F.3d 16 (1st Cir. 2019)………………………………………………………………….. 4

*Frame v. City of Arlington*,
657 F.3d 215, 225 (5th Cir. 2011)……………………...…………………………………… 4

*Fry v. Napoleon Cmty. Schs.*,
137 S. Ct. 743, 748-40 (2017)……………………………………………………………….. 3

*J.A. v. Corpus Christi ISD*,
2018 U.S. Dist. LEXIS 158823 (S.D. Tex. 2018) …………………………………………….. 3

*Janvey v. Alquire*,
647 F.2d 585, 595 (5th Cir. 2011)…………………………………..……………………… 2

*Jesika Smith, et al. v. Orcutt Union School District et al,*
2021 U.S. Dist. LEXIS 29044 (C.D. Ca. 2021)……………………………..…………… 3

*Mi Familia Vota v. Abbott*,
497 F. Supp. 3d 195 (W.D. Tx. 2020)……….……………………………………………… 2

*Pace v. Bogalusa City Sch. Bd.*,
403 F. 3d 272, 275 (5th Cir. 2005)…………………………………….………………… 4

*P.V. v. School District of Philadelphia,*
2013 U.S. Dist. LEXIS 21913, *21-22 (E.D. PA 2013)………………………………….………. 7

*Sheely v. MRI Radiology Network, P.A.*,
505 F.3d 117, 1204 (11th Cir. 2007…………………………………...………………………..4

*Texas v. United States*,
86 F. Supp. 3d 591 (S.D. Tx. 2015), affirmed 809 F.3d 134 (5th Cir. 2015)…………………. 7

*Women's Med. Ctr. v. Bell*,
248 F.3d 411, 418-420, n. 15 (5th Cir. 2001)………………………………………………….. 2

**FEDERAL STATUTES, REGULATIONS, AND RULES**

Fed. R. Civ. Proc. 65 ……………………………………………………………………………. 2

Fed. R. Civ. P. 65 b) (2)………………………………………………………………………. 8

**STATUTES**

20 U.S.C. §§ 1400

**PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**

Comes now Plaintiff O.J. and by his mother, Plaintiff Jennifer Johnson ("Plaintiffs" or "O.J.") and files this Motion for Injunctive Relief against Defendant Tomball Independent School District ("District") and states as follows:

**REQUEST FOR IMMEDIATE HEARING ON INJUNCTIVE RELIEF:**

1. Plaintiffs request the Court issue a TRO or set this matter for an immediate hearing for injunctive relief. O.J. is a child with autism, a disability that causes him to have significant social, communication and behavioral challenges. His doctor has prescribed medically necessary ABA services. Applied Behavioral Analysis (ABA) is a scientifically valid treatment for autism endorsed by the U.S. Surgeon General as long ago as 1999.[1] Plaintiffs have asked the District to allow medically necessary ABA providers to assist O.J. when he attends kindergarten at Great Oaks Elementary School this fall in the District, just as they did at St. Anne, his private school last year. In the school setting, one ABA provider accompanies O.J. daily (Registered Behavior Technician, RBT) and another supervises the services, including by observation of the RBT in the school setting a few hours a week (Board Certified Behavior Analyst or BCBA). Cigna insurance pays the costs of the ABA providers. The District has stated it will only allow the ABA providers for 19 days, ending September 10, 2021. St. Anne begins August 11, 2021. District schools begin August 17, 2021. School plans must be made for O.J.; if the ABA providers will not be continuously allowed at Grand Oaks Elementary, then Plaintiffs will need to proceed with

[1] See, Nat'l Inst. Of Mental Health, Mental Health: A Report of the Surgeon General p.163-164 (1999), https://profiles.nlm.nih.gov/spotlight/nn/catalog/nlm:nlmuid-101584932X128-doc, URL last accessed July 9, 2021 (note- URL opens to p. 151, scrolls to 163-164 discussing autism); quote appears on p. 164, use search term "autism" ("Thirty years of research demonstrated the efficacy of applied behavioral methods in reducing inappropriate behavior and in increasing communication, learning and appropriate social behavior." Main reference to Surgeon General Reports is at https://profiles.nlm.nih.gov/ps/access/NNBBHS.pdf.

a placement at St. Anne. In order for Plaintiffs to adequately plan, they need this Court to rule on injunctive relief rapidly. No bond is required pursuant to FRCP Rule 65(c) because Defendant District cannot be harmed by an order to comply with Federal law.

**REQUESTED INJUNCTIVE RELIEF:**

2. Based upon the verified facts set forth in the Complaint and attached Declarations of Jennifer Johnson (Plaintiff mother), Courtney Burton (BCBA ABA provider) and Dr. Pamela White (BCBA-PhD Expert), the relief sought by Plaintiff O.J. under Federal Rule of Civil Procedure 65 is for: 1) a preliminary injunction to prohibit the District from excluding, limiting, or demitting the ABA providers from Grand Oaks Elementary School as of September 10, 2021.

**ARGUMENT AND AUTHORITIES**

3. The requirements for showing entitlement to a temporary restraining order and preliminary injunction under Fed. R. Civ. Proc. 65 are identical. Plaintiff O.J. must show that: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat of irreparable injury that will result if the injunction is not granted; (3) the threatened injury outweighs any harm to the defendants from the injunction and order; and (4) granting the injunction will not disserve the public interest. *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195 (W.D. Tx. 2020) (preliminary injunction within discretion of court and injunction granted concerning mask-mandate burden on Black and Latino voters); *Women's Med. Ctr. v. Bell*, 248 F.3d 411, 418-420, n. 15 (5th Cir. 2001); *Janvey v. Alquire*, 647 F.2d 585, 595 (5th Cir. 2011); *Canal Auth. Of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

**A. Substantial likelihood of success on the merits**

4. For the reasons articulated in paragraphs 1 through 33, of the original Verified

Complaint, Plaintiffs have met their burden to show a substantial likelihood that he will prevail on his claims that the District cannot exclude or interrupt service from his ABA providers. The ADA and Section 504 "sweep more broadly" and cover discrimination claims brought by both children and adults with disabilities, concerning access to public schools and other settings. *Alexander v. Choate*, 469 U.S. 287 (1985); *Fry v. Napoleon Cmty. Schs*., 137 S. Ct. 743, 748-40 (2017); *Jesika Smith, et al. v. Orcutt Union School District et al,* 2021 U.S. Dist. LEXIS 29044 (C.D. Ca. 2021) (goal of the ADA and Section 504 is to give children with disabilities reasonable accommodations so they can access the school program at all-i.e., to ensure they are not excluded from school and as a result denied the opportunity to obtain an education).

5. The District may argue that plaintiffs failed to "exhaust" pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§1400 et seq. In *Fry*, the Court explained that a plaintiff can seek relief under the ADA and Section 504. So long as the relief sought is not for the denial of a free appropriate public education (as provided by the), then administrative exhaustion is not required. *Fry*, 137 S. Ct. at 754. Plaintiffs have specifically rejected special education (IDEA) services for O.J. **Declaration of Jennifer Johnson, Exhibit 2.** Thus, IDEA administrative remedies exhaustion would be futile and is simply not required. *J.A. v. Corpus Christi ISD*, 2018 U.S. Dist. LEXIS 158823 (S.D. Tex. 2018).

6. The *Fry* Court suggests two factors to decide if the gravamen of the complaint is disability-based discrimination. The first clue entails answering two hypothetical questions: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public school that was not a school-say, a public theater or library? And second, could an adult at the school-say, an employee or visitor-have pressed essentially the same grievance?" *Fry*, 137 S. Ct. at 756. If the answer to both questions is yet, then the complaint is

for discrimination and does not likely fall under other laws that allege a denial of a free appropriate public education. *Smith*, at *7. A second clue is the history of the plaintiffs' prior pursuit for relief. If the parent invokes administrative procedures pursuant to the IDEA, then that might suggest she is indeed seeking relief for the denial of a FAPE. *Smith*, at *8. Plaintiffs have affirmatively declined special education services. **Declaration of Jennifer Johnson, Exhibit 2**. The parent, not the District, has the ultimate decision to decide whether the child has an IEP.

7. Here, the parents' complaint supports the conclusion that the suit does not implicate a denial of a FAPE; it is simply a lawsuit demanding uninterrupted access for Plaintiffs' ABA providers to O.J.'s elementary school. This is similar to a child with seizures bringing his certified service dog to school. In *Doucette v. Georgetown Pub. Sch*., 936 F.3d 16 (1st Cir. 2019), the First Circuit refused to require the child to exhaust administrative remedies before suing the district to allow access to his service dog. It found it would be futile to exhaust IDEA exhaustion because the plaintiffs' injuries could not be redressed by the administrative process and the process would provide negligible benefit to the adjudicating court. It noted that the complaint might occur in a public facility that is not a school. See, e.g. *Sheely v. MRI Radiology Network, P.A*., 505 F.3d 117, 1204 (11th Cir. 2007 (access for service dog in hospital setting); and *D.D. v. L.A. Unified Sch. Dist*., 984 F. 3d 773 (9th Cir. 2020), *vacated*, 995 F.3d 670 (9th Cir. May 6, 2021), 2021 U.S. App. LEXIS 13563 (decision pending after virtual *en banc* held before Ninth Circuit the week of June 21, 2021) (original decision determining child did not have to exhaust to bring claim under ADA/504 for access for ABA providers). Fifth Circuit precedent, for example, recognizes disability discrimination in education and sidewalk accessibility cases. *Pace v. Bogalusa City Sch. Bd.*, 403 F. 3d 272, 275 (5th Cir. 2005) (education) *Frame v. City of Arlington*, 657 F.3d 215, 225 (5th Cir. 2011) (sidewalk accessibility).

As the Supreme Court explained in *Fry*:

> Suppose…that a wheelchair bound child sues his school for discrimination under Title II of the ADA ….because the building lacks access ramps. . . .[A] different lawsuit might have alleged [an IDEA claim]: After all, if the child cannot get inside the school, he cannot receive instruction there; and if he must be carried inside, he may not achieve the sense of independence conducive to academic . . . success. But is the denial of a FAPE really the gravamen of the plaintiff's Title II complaint? Consider that the child could file the same basic complaint if a municipal library or theater had no ramps . . . . That the claim can stay the same in those alternative scenarios suggests that its essence is equality of access to public facilities, not adequacy of special education . . . . And so [the IDEA] does not require exhaustion.

*Fry,* 137 S. Ct. at 756-57. Plaintiffs assert that O.J.'s ABA providers accompany him to Tomball United Methodist Church, Houston Oaks Country club, swim team practice, gymnastics, park/playground and the library, as well as at home. Verified Complaint, ¶ 12. His ABA providers accompanied O.J. to private preschool at St. Anne school during 2021-2022. Verified Complaint, ¶ 14. Plaintiffs simply want O.J. to be able to bring his ABA providers to public school as well.

Further, an adult could press the same issue. In *Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 185 F. Supp. 3d 628 (E.D. Pa 2016), a severely disabled person who required assistance with all aspects of daily living had a personal care attendant (PCA). The PCA helped him 24 hours a day, seven days a week with eating, drinking, toileting, bathing, physical mobility and safety. When Anderson sought to go to the Franklin Institute, a museum, his PCA was with him.

The museum requested the PCA to pay an admission fee and Anderson objected arguing that this deterred him from visiting and therefore, the Institute was violating the ADA. The Court agreed

6. Plaintiffs bring no special education claim. They affirmatively declined special education services and an IEP. **Declaration of Jennifer Johnson, Exhibit 2.**

7. Instead, Plaintiffs desire and the District has offered O.J. a Section 504 plan. **Declaration of Jennifer Johnson, Exhibit 3**. The parties agree that O.J. is a qualified individual under ADA/504 entitled to reasonable accommodations. Plaintiffs want O.J.'s ABA providers (the RBT daily and the BCBA to observe a few hours a week) to accompany him to school as a reasonable accommodation. The District intends to exclude the ABA providers except for the first 19 days of school. That is patently a denial of access. Thus, there is every reason to believe O.J. will prevail just as if a school district wrongly sought to prohibit a student using his wheelchair to enter the school and then demanded he use a school's wheelchair after the first 19 days of school. Or suppose the student wore a hearing aide and the District required the student to use a school-selected hearing aid after the first 19 days of school. There is absolutely no good faith basis for excluding or demitting the ABA providers at all, let alone on September 10, 2021, just 19 days after school begins.

**B. Substantial threat that irreparable injury will result.**

8. If O.J.'s ABA providers are excluded from Grand Oaks on or about September 10, 2021, O.J. will not be able to stay. He will need to be moved back to St. Anne with his twin sister, A.J. where his ABA providers have previously been allowed and will again be allowed. His other two siblings will remain at Grand Oaks. To stay would cause disruption to O.J. as his ABA providers would not be there to help him. So, O.J. will suffer irreparable harm no matter where he goes once the ABA providers must leave as **the District has already decided.** This injury is not

speculative or just some possible remote future injury. And the injury need not have already been inflicted so long as there is a strong threat of irreparable injury before a trial on the merits. *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tx. 2015), affirmed 809 F.3d 134 (5th Cir. 2015) (granting injunction concerning implementation of DAPA program). The injury will occur without this Court's protection. The loss of the ABA providers cannot be remedied by law. School is about to start – August 11, 2021, for St. Anne and August 17, 2021, for the District.

**C. Threatened injury outweighs any harm to Defendants from the Order**

9. There is simply no harm to the District if the Court prohibits them from demitting the ABA providers with O.J. The District has already agreed to allow the ABA providers into the school. They would not have allowed them if there was any potential injury to Grand Oaks Elementary. There is no cost to the District when the ABA providers begin and no cost or harm for them to continue just as they did at St. Anne preschool. In contrast, O.J. will suffer irreparable harm. He will either need to forgo attending Grand Oaks altogether or after just a few weeks of school at Grande Oaks return back to St. Anne's when the District ousts his ABA providers on September 10, 2021. Children with autism do not adjust well to change and such a change is likely and will cause O.J. harm. *P.V. v. School District of Philadelphia,* 2013 U.S. Dist. LEXIS 21913, *21-22 (E.D. PA 2013) concluding that

> "…an unplanned transition for children with autism is likely to affect their learning rate and learning sequences. This is because difficulty with transition is one of the defining characteristics of children with autism"

**Declaration of Dr. Pamela White with Rule 26 Report,** ¶¶ 25-28 (indicating opposition to a plan where O.J. would be subject to change of providers and unable to depend on the same providers).

**D. Injunctive relief will not disserve the public interest**.

10. The limited injunctive relief in this case will help protect Plaintiff O.J. and cause no harm whatsoever to the District. It will not disserve the public interest. The District will not pay a dime for O.J.'s ABA providers. As they are professionals and have accompanied O.J. previously to the school setting of St. Anne, they will not be of any disruption to the school environment. O.J. will be able to attend Grand Oaks Elementary with his twin sister and siblings and with his ABA providers. His parents will be able to be assured that O.J. is receiving his medically necessary care during his school day as recommended by Dr. Barros, Ms. Burton, and Dr. White. The injunctive relief will serve the public interest.

**E. Duration of Temporary Restraining Order**

11. Under Fed. R. Civ. P. 65, a temporary restraining order could issue and would last up to 14 days in duration, unless it is extended, up to another 14-day period, either by consent of the adverse party or by the Court upon a showing of good cause. Fed. R. Civ. P. 65 b) (2). If the temporary restraining order is issued on or about July 12, 2021, it would extend until July 26, 2021, during which time a hearing can be held on this matter. If additional time is necessary to hold the hearing, another 14-day extension could issue but the parties could at least have an order – one way or the other- by no later than approximately August 8, 2021, so that O.J. can be protected, and his parents can make decisions about school for the fall. The District begins school on August 17, 2021 and St. Anne, O.J.'s begins August 11, 2021 so time is short.

12. The undersigned counsel contacted counsel for Defendant District on July 8, 2021,

by both phone and email to determine if Defendant is opposed to the relief sought in this injunctive relief application. Counsel also forwarded District's counsel a near final draft of the Complaint and this motion. Opposing counsel Janet Horton emailed back that she did not have time to read the documents and could not reach her clients to determine the District's response to the lawsuit.

**Conclusion**

13. Because the child's educational placement needs to be determined by no later than August 10, 2021 (the day before St. Anne school would begin), the Court should either issue a TRO prohibiting the District from precluding O.J.'s ABA providers as it plans to do on September 10, 2021, or promptly hold a preliminary injunction hearing on the matter.

Dated this 9th day of July 2021.

*s/Sonja D. Kerr*

Sonja D. Kerr
Lead Counsel, Counsel-In-Charge
State Bar #24095771
Connell Michael Kerr, LLP
9600 Great Hills Trail, Suite 150
Austin, Texas 78759
Telephone: (512)-637-1083
Facsimile: (512)-717-5204
Cell: (610)-675-7192
Email: Sonja@cmklawfirm.com

## CERTIFICATE OF CONFERENCE

I hereby confirm that on July 8, 2021, at approximately 1:40 p.m., I contacted Janet Horton, of Thompson Horton, counsel for the District by phone and email. I provided a near final draft of the complaint and motion in this case, indicating our intent to file this lawsuit and motion. Ms. Horton, on behalf of the District emailed in response that she was traveling and

would not have time to contact her clients. **Exhibit A**. Therefore, the Court should deem this motion opposed.

**CERTIFICATE OF SERVICE**

This document was served through the electronic filing system of the Court upon all counsel of record and was emailed to Ms. Horton at jhorton@thompsonhorton.com and hjanecka@thompsonhorton.com on July 9th, 2021.

*s/Sonja D. Kerr*
Sonja D. Kerr